This court's last case today is Leskosky v. Chessy White. For the appellant we have Mary Labreck. I got something right for a change. And for the appellant, James Martinkus. And this, by the way, is case number 411050. Court will now please proceed. Good afternoon. May it please the court, counsel. My name is Mary Labreck. I'm an assistant attorney general here representing the Illinois Secretary of State, Chessy White. This court should reverse the circuit court's judgment overturning the secretary's straightforward application of section 11-501.8 of the Vehicle Code, which is generally known as the Zero Tolerance Law, to the facts of this case. The order of argument that I propose is this. First, briefly I'll explain why this case is not moved. Even though Ms. Leskosky is now 21 and her three-month suspension is long over, and why in any event this court should heal this appeal under the public interest exception to the mootness doctrine. Then I'll address why the secretary properly rejected Ms. Leskosky's two principal claims that she was entitled to rescission of her suspension because she was chewing gum made with sugar alcohol up to and through the test, and that he should have subtracted the breath test instrument's limited margin of error before determining whether she met the statutory more than 0.00 requirement. Do you disagree that the breath test was administered improperly because there was no observation of her for the 20-minute waiting period  Didn't that violate the breath test rules about how they're supposed to do it? Those are two different issues, I believe, Your Honor. Whether she was properly observed and whether she in fact had something in her mouth. We don't agree that the test was invalidated on either ground. That the officer, well the group of officers, complied with the requirements that they observed her because she was kept for 20 minutes in a place where she was at least perfectly observed by the officers with no access to anything that might have interfered with the test. And she does not contend that she did put anything into her mouth at that time that could have interfered with the test. But did she have anything in her mouth? She said that she did. And the hearing officer and the secretary were willing to assume that she did. Well, they said she was credible. The hearing officer said she was a credible witness, right? That's right. I think he was favorably impressed and he didn't have the idea that she was just coming in to pull the wool over their eyes. But I think that in his view this did not depend on credibility principally because there were two things that he was looking for that she needed to prove and she didn't prove. And the two things that she didn't prove, she did bring in some evidence to connect the gum with alcohol and she produced evidence that she ingested some of that alcohol. But the two places where her proof was short is that she didn't prove one, that it was the kind of alcohol that would have registered on the breathalyzer. And two, even more important, she didn't prove that there was still alcohol in her mouth at the time of the period, at the time of the observation period. I think she has a little bit of confusion about the purpose of the test. I'm sorry, the purpose of the waiting period for the test. The reason for the 20-minute waiting period is that the test expects that the alcohol is coming from deep within the system. And if you have alcohol in your mouth, then it will overestimate the amount of alcohol that you actually have in your system. So they wait 20 minutes for the alcohol in the mouth to dissipate so that when they do the test, it won't be affected by that test result. She does not get a pass simply because, well, if she had proven that the alcohol came from the gum, because the zero tolerance statute is a strict liability offense, it doesn't matter if the gum came, I mean, I'm sorry, if it doesn't matter if the alcohol came from a can of beer, from my grandma's rum cake, or from the gum, as long as it was before the observation period. What you're saying then, if someone chews gum and drives a vehicle and they're under 21 years of age, that would be enough if the breathalyzer reads .01 to suspend their driver's license? If all of the rules were complied with, I suspect that if somebody did prove that the effect of the gum was so strong that it not only was initially detectable, if you tested a person right after they put the gum in their mouth, but it continued to release alcohol for a period of an hour and a half, that we're talking about here, in that case, the test would be disqualified because there would be something to interfere with the test results. But if she had stopped, and there still was some effect, there still was a .01 effect because the gum was that strong even though there was nothing in her mouth, then the zero-tolerance law would apply. So then you are arguing that if gum can produce a .01 readout, under our current law and the administrative rules governing it, the person would be subject to a driver's license suspension because of the gum. I believe so. Under the laws, it now stands, Your Honor. I think that if someone were to prove that this was the case, that the gum is that strong and it is having that kind of effect, we would probably see a change in the law, but it would be up to the legislature or the regulators how they wanted to do that. Well, she says she was chewing gum. The hearing officer says he believes her, so I'm going to assume she's chewing gum. She says that it has sugar alcohol in it. Isn't that enough to shift the burden of proof over to the state? So once she's believable and she's put that into evidence, doesn't the state then have to come in and disprove that it was the gum that caused the .00 readout? She's got to fully prove something that the regulation provides. You're not supposed to have anything in your mouth and you're supposed to be observed for 20 minutes, and she's believable? I'm sorry, but she hasn't proven that there was still alcohol in her mouth. She's proven that there was something containing sugar alcohol that she ingested at one point in time. She's not proven that it was still releasing alcohol, and we can't simply assume that. The hearing officer couldn't. There may be some people for whom that would be enough information. But counsel, I think your problem is she's not supposed to have anything in her mouth. Well, the regulation does not require that someone check to see if she has anything in her mouth. Does it require that she not have something in her mouth? No, it doesn't require that she not have something in her mouth. I'm confused. What do the regulations say? They say that she must be deprived of alcohol or a foreign object during the 20-minute period. And a foreign object is specifically defined by regulation as something that is not in the subject's mouth at the commencement of the observation period. This didn't qualify on either basis. Her gum didn't qualify on either basis because she didn't prove that it had alcohol and she didn't prove that it was a foreign object because she didn't prove that it was introduced after the period started. Okay. If she wasn't observed for 20 minutes, then the period never started, did it? But she was observed for 20 minutes. I'm sorry, I don't understand. Okay, well, it's probably me. I thought she was found to be believable. I thought she said that she was not observed for 20 minutes. If she's believable and she says that, then I'm going to say that she was not observed for 20 minutes. But now you seem to be arguing that she was observed for 20 minutes before she actually blew. I think I see what you're asking. When she says that she was observed, she was drawing a conclusion. She was not testifying as to original facts. She seems to have believed that she wasn't properly observed because it wasn't the same officer who did it the entire time, because nobody interacted with her, nobody seemed to be focused on her and giving her their attention. But we know from the case law that those things aren't required. She didn't know that, but we do. And so even though the hearing officer could believe that she was truthful, it's still consistent with his understanding that she, in fact, was observed properly during the period. The facts are... Doesn't the rule say that the BAO or another agency employee shall continuously observe the subject for at least 20 minutes? That's right. So that doesn't mean that you just have a parade of jail personnel peeking in on her now and again, does it? Well, it allows them to change off, which is what happened. The hearing officer, I mean, the police officer... Did they change off continuously? I don't think this... I didn't see in the record any evidence that they changed off continuously. Well, doesn't the rule require... I'll say it again. The BAO or another agency employee shall continuously observe the subject for at least 20 minutes. It requires that somebody keep her monitored, but it doesn't have to be the same person. There may be some... But I asked you the question about whether or not it was continuous, and you said you didn't know.  I do believe that the observation was continuous, although it wasn't continuously done by the same person. She wasn't left without somebody who could at least check with peripheral vision. There's nothing in the record that suggests that she was. All right. She also argues that she only had to show something in her mouth under the Miller case. But that case, as I explained in my brief, was interpreting an older version of the regulation before the foreign objects limitation was placed on it. At that time, that was correct. But under the law at the time that her test was conducted, that's not the way it worked. Her second principle argument is that the secretary should have applied the margin of error permitted by regulation before he determined that she qualified under the more than 0.00. Before you go to the margin of error argument, let me ask you again about the administrative code. During the 20-minute observation period, the subject shall be deprived of alcohol and foreign substances. And you say, this was not a foreign substance because it was not... She didn't begin to use it during the 20 minutes? That's right, because there's the definitions provision that specifically defines what foreign object means for purposes of this regulation. And that says that foreign substance means any substance not in the subject's body when a 20-minute observation period is commenced. And it says not in the subject's body because there are other things. Someone could have snorted something or injected something. What about the language that says shall be deprived of alcohol? Is chewing gum with alcohol alcohol? If she had proved that the gum was still releasing alcohol into her mouth during the observation period, then she would have made her puma face a face. But there was no proof that it was still releasing alcohol at that time period. There was proof that it had alcohol in it at one time. It had some kind of alcohol in it at one time, that's right. Doesn't that switch the burden of proof to you to show that the time had expired? Well, the regulation says that she has to be deprived of alcohol and she has the burden of proof on that point. So she can't just come up with a theory that explains how, if she had enough evidence, how it might possibly be. She has to make her proof of that. And then it turns over. Just like in Venuti when he claimed that... It sounds like everything you introduce, defendant, is going to be suspect. We're going to find a problem with everything you say. No, if she had produced evidence that this was an authoritative source, that this was the kind of alcohol that's tested by the breathalyzer and it does have a continuing effect, then the secretary would have to accept it. But there was no such evidence. All there was was her speculation. Well, it had alcohol in it once, it must still. And she tried to shift the burden to the secretary at that point. If you accept the proposition that it had alcohol in it at one time and that at some point that alcohol would disrupt the test, how does the state say, well, too much time has expired, without any evidence of that? Well, because the regulation tells us it has to be within a particular 20 minutes, which is why she has to prove that it was in those particular 20 minutes. She has the burden of proof to show that that rule was violated and the rule says she has to prove it. Well, let me ask you this. Suppose she drank a can of beer during 20 minutes. And then the state comes up and says, we don't know whether that can of beer had alcohol in it or whether it was an alcohol-free can of beer. Well, because the beer would have been a foreign object in that case, so we wouldn't even have to go to the question of alcohol. But what if she had some cough drops in her mouth when the 20 minutes started? And they had a lot of alcohol in them, a lot more than this gum allegedly did. She doesn't add it in after the 20 minutes starts, but she just continues to have the cough drops in her mouth and about, I don't know, 18 minutes into the observation period, they're probably gone and then she blows two minutes later. According to your definition of this foreign substance, that wouldn't make any difference. Well, as I understand your hypothetical, the cough drops were releasing alcohol into her mouth, so it would satisfy the alcohol part. She'd just have to prove it. She couldn't just say, I had cough drops. She'd have to bring some kind of evidence. Okay, so the substance not in the subject's body would be, it's not the cough drops, it's the alcohol in the cough drops. Is that your argument? I wasn't trying to distinguish between the alcohol in the cough drops and the cough drops as far as a foreign substance is concerned. I was just saying that. There are some people out there that still chew tobacco, hard to believe, but they had tobacco in their mouth. Cough, say, okay, we're not going to make you take it out. They start the 20 minutes, so the tobacco was in the mouth for the entire 20 minutes. That's not a foreign substance. That's right. And in order to prove that the test was on, it doesn't make a dart whether it may have an effect on what is actually blown. It's just not a foreign substance. Oh, no, it does. It's just in that case the person has to prove it, that's all. The person has to bring up some evidence to prove it. If she could show it was a foreign object, then she wouldn't have the burden of proving the effect. The regulation gives the plaintiff a little break that way. But if she can prove, then she wins her rescission. She just hasn't here. We're not saying that if she comes up with good proof that she had alcohol in her mouth during that period, we're not going to let her have it. We're just saying she didn't. What's good proof? Well, proof by an authoritative source that this is the kind of alcohol that is registered on the breathalyzer, and also proof that it continues to release into the subject's mouth through that period. She could do that with expert testimony, I assume, with an authoritative article or something. It seems to me in the practical day-to-day world of how these things work, I used to do this kind of work on the defense side. I've never known of a breathalyzer operator that would not make you empty your mouth before the start of the 20-minute period. Well, the officer doesn't seem to have realized that she was too young, and I assume that if he did, he would have suggested that. I'm also surprised that she herself didn't ask before she was going to take the breathalyzer test, should I take this out. How old was she? Huh? How old was she? She was pretty young. Well, okay. I assume that the officer would have asked if he had noticed it, but it doesn't make sense to do a separate rule based on whether he notices it or not. It would, I mean, and to give people an incentive to hide the gum by saying, if he doesn't see it, get away with something. Well, if he tells her to empty her mouth and she conceals it, that's a different story, isn't it? Or refuses to empty her mouth, that's probably a refusal, isn't it? Yes. That might be a good rule to have, but we have precedent that says that the officer does not have to ask. And the court actually said that, too. They said it would be a good idea, it would be prudent to do that, but the statute and the regulations do not require that he ask for a check or not. Is there a case law on that? The People v. Van Bellahem case addressed that issue and said that they did not have to ask. Do you concede that gum containing alcohol can produce an adverse test? I don't. I don't have the information to say whether or not it can. Okay, you'll have rebuttal. Interesting argument. Thank you, Your Honor. I'm sure Mr. Martinkus' argument will also be interesting. May it please the Court? You know, Your Honor, this seems to me to be somewhat simple. You're required to check and observe for 20 minutes just to avoid this problem. And you're exactly right. Every time I've ever done this thing, the first thing you look at is your mouth. It makes sense. But the only evidence at all that was presented on the issue of observation is this. This is her testimony. Nobody else testified. During the 20 minutes of time prior to your being asked to take this test and prior to taking the test, was Officer Hills with you and watching you? Absolutely not. And during the same 20-minute period prior to taking the test, was there any other officers who were observing or watching you? No. You were just sitting there by yourself, basically? Yes. So there was no compliance with the 20-minute observation period, and I disagree completely with counsel. Venuti does not require us to prove all sorts of issues. We have to prove that the glycerol, the alcohol in the gum, affected the test. Venuti, in my reading, was already clear. If we present prima facie evidence, what more evidence could be prima facie in this case? We presented evidence. She was chewing gum throughout the entire period. The gum contained alcohol. The alcohol was in the mouth. And that's exactly why you take it out. Because, in fact, if the gum is not in the mouth, I'm assuming that the 20 minutes are a lot of dissipation, then you can't get a true test. This is not a case where there was a true test. This is a case where a young person had gum, alcohol-based. I don't know if it expired or not. How can anybody know without some proof? And really the question becomes, is it our burden of proof? I don't believe it is. I think Venuti clearly answers that. Once we've established a prima facie case, the burden shifts to the state. The state has to put on some proof saying it doesn't matter, that alcohol would have dissipated or that alcohol would not have been detected or something like that. But here nothing was done, nothing whatsoever. So that's the first issue. And, again, the issue of the sworn statement is another, I think, important issue. You have a sworn statement that the hearing officer permitted. The test was a 9-19. The sworn statement was dated 9-2, signed five months after the fact, and had an unknown defendant on it. I objected. I said this can't be the proper foundation for this being admitted. So in addition to no observation period, alcohol in the mouth during the 20-minute period, the sworn statement has the wrong date and an unknown defendant on it. I mean, if you look at the statement in Venuti, this is the Supreme Court, where it says the public policy upon which administrative regulations are based is to ensure that only accurate breathed alcohol tests are admitted into evidence. Reliability is the paramount concern. And it should be that way. If someone doesn't comply or if the state doesn't comply with these regulations, you shouldn't take someone's license. You shouldn't suspend it. If you comply with these regulations and you come within the results, then you lose your license. But in this case, there wasn't even close compliance. So I don't see where the circuit court erred in finding that the hearing officer in this case simply overstepped his bounds. I think that's clearly what took place. Counsel, this court has to be mindful of setting precedent. Tell me why it would be good precedent for this court to say that if an 18-year-old chews gum, that could throw a monkey wrench into the state's case because the chewing of the gum in and of itself could cause the breath-wise test results to be inaccurate. Because I think, you know, I know there's the reference you make to the one case, and there is a case that talks about, well, maybe the officer doesn't really have to check. But I don't think that should be the law. I think as you look at this issue, what's the purpose of the observation? It's to eliminate that issue. It's to make it clear that there's nothing else in the mouth. What kind of burden is that on the police or the state? There's no burden here. Just look to see. Observe for 20 minutes. Do you have gum in the mouth? You're not creating any difficulty. If you have gum in the mouth, you have gum in the mouth. Well, do you agree with me if the officer says, spit out the gum, it's concealed? Absolutely. That that becomes a refusal? Absolutely. And that results in suspension as well? Yes, sir, absolutely. But why would you put someone in a position where the regulations say you can't have alcohol during the period, the regulations say you've got to observe, they don't observe, and they don't tell her about this, and she has alcohol-based gum, and she blows the most minimal thing, .01, and, you know, that's not what it should be. It's not under the Benuti standard that you're not supposed to let people get convicted of this if, in fact, they don't follow the rules. These aren't hard rules to follow. They're really not. And that's the thing that is troubling in this case. You have simple rules, simple observation period. If the person lies or conceals, then, you know, forget about it. But that's not what took place here. You know, we obviously raised a couple other issues, which we talked about in the brief. I don't know if the court has any interest or not. I mean, I think that this was the principal issue. I raised the issue in the statute of whether or not you can go to the third digit and so forth, but I think it's laid out in the brief. I don't have any reason to argue further unless the court needs to hear on that. It doesn't appear so. Thank you very much. Rebuttal, please. I'd just like to mention that the Bonudi case was about the interpretation of a statute or a regulation and not specifically about the issues of proof that we're talking about here. Nonetheless, what we are asking her to do is more like what the plaintiff actually did to make this prima facie case in Bonudi because he brought on an expert witness to testify that he had esophageal reflux syndrome, that the reflux was equivalent to regurgitation, which is what the regulations say. And they were basing it specifically on what it said in the regulation. And the reason he didn't have to go beyond proving that he had the regurgitation is because the regulation specifically said that regurgitation is something that will invalidate the test. I'd also like to say something very quickly about her claims about the sworn statement. She says that it has an unknown defendant and a wrong date. Actually, the date that she's referring to does not purport to be the date on which Ms. Leskoski was given the test. That purports to be the date that the test was last certified before her test. The two logbook pages that we have are the pre- and post-test. The sworn statement does have the one consistency, which is that it says it includes, in addition to those two pages, it says it includes the page with her test on it, and it does not. However, there are two cases that have held that an omission like that is not enough to invalidate the test. Claudio and the Barwe case, I believe, have both said that just omitting the test to show the date on which the plaintiff was given the test. And this is because there's no dispute about the matters that it contained. There's no dispute about what date she was tested, that in fact she was tested, and what her outcome was. So that does not raise any serious concern about the reliability of the test. If you have no further questions, I thank you, Your Honors. We ask you to reverse the circuit of the Court's judgment and reinstate the Secretary's decision denying Leskoski's request for rescission of her zero-tolerance suspension. Thank you to both of you. The case is submitted. The Court stands in recess.